**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LORIENT ROXBORO, LLC, *et al.*,

      *Plaintiffs*,

    v.

MARKWAYNE MULLIN, Secretary of
Homeland Security, *et al.*,

      *Defendants*.

Civil Action No. 1:26-cv-00358 (CJN)

**MEMORANDUM OPINION**

Plaintiff Lorient Roxboro, LLC is a "new commercial enterprise" formed to raise capital under the EB-5 visa program, which allows foreign investors to apply for lawful resident status upon making certain qualifying investments in the United States. Plaintiff Vishnu Menon is one of Lorient's investors, having contributed $800,000 to the enterprise in the hope of becoming a lawful permanent resident. But the plan faltered after one of Lorient's principals missed an appointment with United States Citizenship and Immigration Services, which then denied the enterprise's "I-956F" application for approval. That denial in turn doomed Menon's "I-526E" immigrant investor petition as well as his "I-485" application to adjust his immigration status. Menon now moves to stay the effective date of the denial of his I-485 application. For the reasons given below, the Court denies Menon's motion.

**I.    Background**

**A.    Statutory and Regulatory Framework**

Congress established the EB-5 immigrant-investor visa program as part of the Immigration Act of 1990. *Delaware Valley Reg'l Ctr., LLC v. Dep't of Homeland Sec.*, 106 F.4th 1195, 1197 (D.C. Cir. 2024); 8 U.S.C. § 1153(b)(5). EB-5 visas are allotted to immigrants "who have invested

1

capital in a new commercial enterprise that will benefit the United States economy and create full-time employment for ten citizens or non-citizens with work authorization." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374 (D.C. Cir. 2020) (citation modified). An immigrant can satisfy the EB-5 employment-creation requirement by creating jobs indirectly through something called a regional center. *Delaware Valley*, 106 F.4th at 1197. Regional centers are entities approved by USCIS to facilitate the pooling of EB-5 investments in specified geographic areas. *Id.* at 1198; *Doe v. McAleenan*, 929 F.3d 478, 480 (7th Cir. 2019) (describing regional centers as "clearinghouses for eligible investment opportunities"). Essentially, regional centers "sponsor" new commercial enterprises by securing project approvals on the enterprises' behalf. *Delaware Valley*, 106 F.4th at 1200; *Doe*, 929 F.3d at 481.

A regional center must apply to USCIS for approval of each project that it intends to sponsor by filing a Form I-956F. *Delaware Valley*, 106 F.4th at 1200. Individual investors in the new commercial enterprise may then file petitions to receive visas based on their investments in the project referenced in the Form I-956F. *Id.* That process begins with a petition to USCIS for classification as an EB-5 investor using Form I-526E, "Immigrant Petition by Regional Center Investor." *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 98 (D.D.C. 2021); USCIS, I-526E, Immigrant Petition by Regional Center Investor, https://www.uscis.gov/i-526e. An I-526E petitioner must demonstrate that he or she has invested at least $800,000 in a specific regional center project and satisfies other EB-5 requirements. *Komma v. Edlow*, No. 2:25-cv-3702, 2026 WL 1113887, at *1 (E.D. Cal. Apr. 24, 2026).

Foreign investors may also file Form I-485 "Application[s] to Register Permanent Residence or Adjust Status" concurrently with their I-526E petitions. *See Supriya Subramanyan et al. v. Carrie M. Selby et al.*, No. 8:26-cv-00113, 2026 WL 1196250, at *1 (C.D. Cal. Apr. 27,

2026).  Upon approval of a Form I-485, the applicant becomes a two-year conditional permanent resident.  8 U.S.C. § 1186b(a)(1).  Form I-485 applications are governed by the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1537, which confers upon the Secretary of Homeland Security broad discretion to adjust the status of aliens to lawful permanent residence.  Specifically, the statute provides that the status of a qualifying noncitizen "may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a).  The INA strips courts of jurisdiction to review "any judgment regarding the granting of relief under § 1255."  8 U.S.C. § 1252(a)(2)(B)(i). Federal courts thus "lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255."  *Patel v. Garland*, 596 U.S. 328, 347 (2022).

### B.    Factual Background and Procedural History

Lorient is a new commercial enterprise formed to raise capital under the EB-5 visa program.  ECF No. 1 (Compl.) ¶ 1.  Lorient is working with a regional center known as Great Lakes Regional Center LLC, which on December 11, 2023, filed an I-956F application with USCIS on Lorient's behalf.  *Id.* ¶¶ 2–3; 47.  The I-956F application included a "Form I-956H, Bona Fides of Persons Involved with Regional Center Program."  *Id.* ¶ 48.  That form included details regarding Lorient's "managing member," a company called Lorient Homes, LLC.  *Id.* ¶ 48. The two principals of Lorient Homes are Mohammed Nawaiseh and Al Kurdieh.  *Id.* ¶¶ 48–49.

As part of the process of adjudicating an I-956F application, "persons involved" with the enterprise and listed on Form I-956H are required to attend a biometrics appointment and undergo background checks to ensure they are not prohibited from participation in the EB-5 program.  *Id.* ¶ 5.  But while Nawaiseh received and attended a biometrics appointment, Kurdieh allegedly never received a biometric notice and therefore did not attend his appointment or attempt to reschedule it.  *Id.* ¶¶ 6–7.  Plaintiffs allege that this was the result of a USCIS mailing error.  *Id.* ¶ 7.  In the

meantime, Lorient recruited Menon as one of its three investors.  He contributed $800,000 to the enterprise, *id.* ¶ 43, and on February 15, 2024, filed an I-526E immigrant investor petition and I-485 adjustment of status application, *id.* ¶ 4.

On September 12, 2024, USCIS denied Lorient's I-956F application for "abandonment" because Kurdieh did not attend a biometrics appointment.  *Id.* ¶ 8.  Lorient filed a motion to reopen that denial the following month, but USCIS denied that motion in August 2025.  *Id.* ¶ 9.  Lorient filed a second motion to reopen *that* denial one month later, *id.*; that motion was denied in February 2026.  *See* ECF No. 8-2 (Second Denial).  In the meantime, USCIS denied Menon's I-526E petition in September 2025 and denied his I-485 application the following month.  Compl. ¶ 10.  Menon filed a motion to reopen his I-526E petition, *id.* ¶ 13, but that was denied on February 9, 2026.  *See* ECF No. 13 (Reply) at 2.  Menon also filed a motion to reopen the denial of his I-485 application; that motion was denied on November 12, 2025.  ECF No. 8 (Mot.) at 13.

In its decisions denying Lorient's motions to reopen the I-956F applications, USCIS gave two justifications.  First, it identified deficiencies in the record regarding several relevant requirements, including "Capital," "Comprehensive Business Plan," "Credible Economic Analysis," "Documents Filed with Securities Regulator(s)," and "Bona fides of persons involved with regional center program."  Second Denial at 6.  Second, USCIS noted that it had mailed both biometric appointment notices to Kurdieh at the address indicated on his Form I-956H and had mailed courtesy copies of the appointment notices to the attorney of record at the address indicated on a different form.  *Id.* at 8.  Because "[n]one of the biometrics appointment notices were returned to USCIS as undeliverable," "USCIS considered both appointment notices properly delivered."  *Id.*  USCIS concluded, as a result, that Lorient "failed to provide that the abandonment denial was

in error" and dismissed the motion to reopen and reconsider. *Id.*; *see also* ECF No. 8-1 (First Denial) at 6–8.

Plaintiffs filed this suit on February 6, 2026. Compl. ¶¶ 20–23. Plaintiffs claim that the denial of the I-956F application for abandonment was arbitrary and capricious, and, as a result, the denials of Menon's I-526E and I-485 applications were arbitrary and capricious as well. *Id.* ¶¶ 114–119. Plaintiffs also contend that the failure to provide adequate notice of the biometrics appointments, failure to provide notice that Kurdieh had missed the appointments, and denial of Lorient's application and motions to reopen because Kurdieh missed his appointments violates due process. *Id.* ¶¶ 120–128.

On April 14, 2026, Plaintiffs filed a motion for a temporary restraining order or preliminary injunction staying the effective date of Menon's I-485 denial so that he would not "accrue more than 180 days of unlawful presence and be subject to a three-year bar on returning on April 19, 2026." Mot. at 1. The Government opposed Plaintiffs' motion but also moved to dismiss. ECF No. 11 (Opp.). Plaintiffs' reply in support of their motion states their intention to amend their complaint to remove certain mooted claims. Reply at 3.[1] The Court will thus address only Plaintiffs' motion for preliminary relief, which asks the Court to "stay the effective date of the denial of Plaintiff Menon's I-485 application . . . from the date of filing of this lawsuit through the final resolution of the matter by the Court." ECF No. 8-3 at 1.

## II.    Legal Standard

Section 705 of the APA authorizes courts to "postpone the effective date of an agency action" "[o]n such conditions as may be required and to the extent necessary to prevent irreparable

---

[1] Plaintiffs also asserted mandamus claims in their complaint, Compl. ¶¶ 129–140, but they concede those claims are now moot. *See* Reply at 2–3.

injury." 5 U.S.C. § 705. "The factors governing issuance of a preliminary injunction also govern issuance of a § 705 stay." *District of Columbia v. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To prevail, "a party seeking preliminary injunctive relief must make a clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citation modified).

### III.    Analysis

Plaintiffs' complaint challenges three distinct actions: the denial of Lorient's I-956F application for approval of an EB-5 project, the denial of Menon's I-526E immigrant petition by a regional center investor, and the denial of Menon's I-485 application to adjust his immigration status. While that challenge proceeds, Menon seeks preliminary relief in the form of a stay of the effective date of the denial of his I-485 application. But under the relevant factors, Menon has not shown that he is entitled to the extraordinary remedy of preliminary relief.

### A.    Likelihood of Success

The "first and most important factor" in deciding whether to grant preliminary relief is whether the movant has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Menon challenges the denial of his I-485 application, which he contends was arbitrary and capricious and violates due process. Compl. ¶¶ 114–128. Form I-485 allows applicants in the United States to apply for lawful permanent resident status. *See* USCIS, I-485, Application to Register Permanent Residence or Adjust Status, https://www.uscis.gov/i-485. The process is governed primarily by Section 245 of the INA. *See* 8 U.S.C. § 1255; *Costa v. U.S.*

*Atty. Gen.*, 578 F. App'x 903, 904 (11th Cir. 2014) (per curiam).  But that statute provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title."  8 U.S.C. § 1252(a)(2)(B)(i).  Plaintiffs' APA claim is thus likely "foreclosed by a straightforward application of § 1252(a)(2)(B)(i) and the Supreme Court's decision in *Patel*."  *Abuzeid v. Mayorkas*, 62 F.4th 578, 583 (D.C. Cir. 2023).

"The only remaining avenue for relief from a denial of adjustment of status is provided by § 1252(a)(2)(D), which allows review of 'constitutional claims or questions of law' raised in removal proceedings, 'upon a petition for review [of a final order of removal] filed with an appropriate court of appeals.'"  *Id.* at 585 (quoting 8 U.S.C. § 1252(a)(2)(D)).  Menon raises a constitutional due process claim, but his claim is not brought upon a petition for review of a removal order and was not filed in the relevant court of appeals.  Menon is therefore not likely to prevail on the merits of his challenge to his I-485 denial.

Perhaps recognizing the uphill climb, Plaintiffs devote the bulk of their motion to challenging the denial of Lorient's I-956F application in the belief that, "[i]f the I-956F denial was unlawful, erroneous, or arbitrary and capricious, then the denials stemming directly [from] that decision would be also."  Reply at 6.  As to that denial, Plaintiffs argue that, "when Defendants denied the I-956F, they denied the wrong form, in contradiction of their own regulations."  Mot. at 16.  In other words, Plaintiffs contend that any problems with Kurdieh's biometrics should have only affected *his* I-956H form and not also doomed *Lorient's* I-956F application.  But Kurdieh's I-956H form is intrinsically linked to Lorient's I-956F application.  After all, each person involved with a new commercial enterprise "must complete and submit Form I-956H, Bona Fides of Persons Involved with Regional Center Program, as a distinct filing along with . . . Form I-956F."  *See* I-956H, Bona Fides of Persons Involved with Regional Center Program, https://www.uscis.gov/i-

956h.  The I-956H form is then included "within a separate envelope or folder in the Form I-956 or Form I-956F packet."  *Id.*  So even if the I-956H form is "specific to a person," Mot. at 16, any faults found in Kurdieh's form are themselves faults with Lorient's application.

Lorient's core objection is that its I-956F application should not have been denied because Kurdieh failed to appear for a biometric screening appointment he never knew existed.  But even assuming Kurdieh's failure to appear was justifiable, it does not necessarily render USCIS's denial of the I-956F application unlawful.  The denials to reopen or reconsider Lorient's I-956F application note that, in addition to the biometrics issue, USCIS also found deficiencies relating to capital, business plan, economic analysis, and other requirements.  *See* First Denial at 6; Second Denial at 6.  Nothing in Lorient's complaint or motion demonstrates why those determinations were arbitrary or capricious, and it is unclear whether Lorient even challenges that explanation at all.  In any event, even if the Court concludes that the I-956F denial was likely unlawful, that conclusion would not render the denial of Menon's I-485 application suddenly reviewable.

### B.    Remaining Equitable Factors

The remaining equitable factors, of course, ask whether Plaintiffs "will be irreparably injured absent a stay," "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and "where the public interest lies."  *Nken*, 556 U.S. at 434 (citation omitted).  "[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction."  *Winter*, 555 U.S. at 22.  The Court of Appeals "has set a high standard for irreparable injury," requiring that the harm "must be both certain and great," "actual and not theoretical."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted).  The moving party must also show that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.* (citation modified).

Menon certainly faces a risk of harm, as "[a]bsent a stay . . . he either needs to leave and risk a visa backlog and a year or more (possibly many) outside of the U.S." or remain and "risk being placed in removal proceedings and becoming subject to" a years-long ban on returning to the country. Mot. at 22; *see* 8 U.S.C. § 1182(a)(9)(B)(i)(I). But "a stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation modified). Further, Menon's harm is not "beyond remediation" absent preliminary relief. *Chaplaincy*, 454 F.3d at 297. Although he faces the risk of removal, removal "is not categorically irreparable" because "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435.

The two remaining factors—the balance of the equities and the public interest—"merge when the Government is the opposing party." *Id.* Plaintiffs argue that the balance of the equities favors a stay because "a person's life should not be turned upside down because of what is most likely a government mailroom error." Mot. at 24. The Government denies that any such error occurred and emphasizes that its interests approach their "zenith at the international border." Opp. at 24 (quoting *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004)).

When a party "seek[s] to stay the enforcement of a federal regulation against them, often the harms and equities will be very weighty on both sides." *Ohio v. EPA*, 603 U.S. 279, 291 (2024) (citation modified). That is true here, but the balance tilts toward the Government. First, a stay would contravene the "judicial deference to the Executive Branch [that] is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)). Second, in "considering the balance of equities

9

among the parties," Plaintiffs' belated request for preliminary relief—filing a motion mere days before Menon approached a total period of 180 days of unlawful presence despite months of forewarning—"weigh[s] against" Plaintiffs' request. *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam).

### IV.    Conclusion

For the foregoing reasons, Plaintiffs' Amended Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 8, is denied.  A separate Order accompanies this Opinion.

DATE:  May 18, 2026

CARL J. NICHOLS
United States District Judge

10